UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14-CV-00594-JHM

KEITH SAUNDERS                                         PLAINTIFF

V.

FORD MOTOR COMPANY, JEFF MARSDEN,        DEFENDANTS
KAREN MORRISON, and UNICARE LIFE
AND HEALTH INSURANCE COMPANY

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand [DN 9]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Remand is **DENIED**.

### I. BACKGROUND

Plaintiff Keith Saunders began working for Defendant Ford Motor Company ("Ford") in July 2001. (Compl. [DN 1-2] ¶ 9.) Plaintiff is a member of a bargaining unit, Local 862 of the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). (Id. ¶ 24.) Ford and UAW Local 862 are parties to a collective-bargaining agreement ("CBA"). As a union worker, Plaintiff's employment is governed by the CBA entered into by UAW Local 862 and Ford. Pursuant to the CBA, Ford provides its eligible employees with disability and accident/sickness benefits under a welfare benefit plan, which is governed by ERISA. Ford is the Plan Administrator for the plan, which is self-funded by Ford, and for which Defendant UniCare Life and Health Insurance Company ("UniCare"), acts as the claims processor.

In 2001, while working at Ford's Minnesota facility, Plaintiff sustained work-related injuries, which worsened in 2006. As a result of these injuries, Plaintiff was placed on permanent work restrictions. Plaintiff's workers compensation claim arising from 2001 is still ongoing with Defendant Ford.

In December 2011, Plaintiff was relocated to the Louisville Assembly Plant. Plaintiff alleges that upon relocation, he was stripped of his seniority and placed in a job that violated his work restrictions. According to Plaintiff, he requested accommodations for his disabilities, but Defendant Ford refused to reevaluate him, advising Plaintiff that the company doctors felt as though Plaintiff could "perform the functions of the position without restriction." (Id. ¶ 27.)

On February 1, 2013, Plaintiff filed a charge of discrimination based on disability and failure to provide reasonable accommodation with the Equal Employment Opportunity Commission ("EEOC"). According to Plaintiff, around five days after filing the charge, he was placed on "No Work Available" ("NWA") status and put off of work by Defendant Jeff Marzian[1] ("Marzian"), Superintendent of the Louisville plant, which Plaintiff contends was in violation of the CBA. (Id. ¶ 30–32.) Plaintiff subsequently filed a grievance with his union representative in April 2013, alleging that Defendant Ford had violated the CBA without justification and requesting that Plaintiff receive eighty days' pay for lost wages because of being placed on NWA status.

In spring 2013, Plaintiff, Defendant Ford, through Defendant Karen Morrison ("Morrison"), Labor Relations Supervisor at the Louisville plant, and the EEOC engaged in mediation. As a result of the mediation, Plaintiff was placed back to work in the trim department, in a position which met his work restrictions. Around three weeks later, Ford informed Plaintiff that there was no longer any work available in the trim department and moved him to another department. Plaintiff contends that there was still work available in the trim department at that time and that his new position, although it did not violate his work restrictions, was below his seniority level. (Id. ¶ 39–40.) According to Plaintiff, another employee not named in this action repeatedly harassed Plaintiff while he performed his new job, by making

---

[1] Improperly identified in the Complaint as "Jeff Marsden."

statements like "you're loitering" and "you can't so [sic] shit." (Id. ¶ 41.)  As a result of that harassment, Plaintiff states he checked himself into a medical facility for anxiety, depression, and stress, where he stayed for approximately six weeks between October and December 2013. (Id. ¶ 42–44.)

During the time Plaintiff was in the hospital, he received health benefits from Defendant UniCare, pursuant to Ford's self-funded ERISA benefits plan.  Plaintiff was released and cleared to return to work around December 16, 2013.  Sometime after December 16, 2013, Plaintiff alleges that UniCare stopped paying Plaintiff benefits, despite that Plaintiff was still being treated for depression and anxiety stemming from work related treatment.  (Id. ¶ 54.)  On January 27, 2014, UniCare started sending Plaintiff benefits again.

Also on December 16, 2013, Plaintiff filed a second grievance with UAW Local 862, which he alleges has not been addressed.  Plaintiff contends that he contacted Labor Relations about finding him a position, which in turn contacted Defendant Marzian.  According to Plaintiff, Defendant Marzian did not exhaust any zones to find Plaintiff a position and instead immediately placed him on NWA status, which Plaintiff contends was a violation of the CBA. (Id. ¶ 51.)  Plaintiff additionally asserts that Defendants Ford and Marzian did not wait for the Job Placement Committee to meet and make a determination regarding Plaintiff before placing him on NWA status, which Plaintiff contends also violated the CBA.  (Id. ¶ 52.)

In May 2013, Plaintiff contends that Defendant Morrison refused to place Plaintiff back to work even though allegedly he had been called back to work, because she believed he had signed a worker's compensation agreement and resigned from Defendant Ford.  (Id. ¶ 62.) According to Plaintiff, in early June 2014 the UAW informed him that the UAW system showed that Plaintiff had been discharged as of May 16, 2014, when in fact he had not been.  (Id. ¶ 63.)

Plaintiff states that since that time he was placed in a temporary position in violation of his rights under the CBA.

On July 30, 2014, Plaintiff filed this action in Jefferson Circuit Court against Ford, two of its employees, Marzian and Morrison, and UniCare.  In his complaint, Plaintiff raised twelve separate state-law claims against Defendants: (1) disability-based discrimination in violation of the Kentucky Civil Rights Act ("KCRA"), KRS 344.040; (2) retaliation in violation of the KCRA; (3) retaliation for filing a worker's compensation claim in violation of KRS 342.197(1); (4) wage and hour violations; (5) violation of Kentucky's insurance laws; (6) tortious interference with a contract; (7) violation of KRS 344.045; (8) negligent infliction of emotional distress; (9) failure to protect; (10) negligent hire/retention/supervision; (11) promissory estoppel; and (12) civil conspiracy.

On August 26, 2014, Defendants removed this action from the Jefferson Circuit Court to this Court alleging federal question jurisdiction.  Defendants assert that removal is proper because Plaintiff asserts claims that are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (Def.'s Removal Notice [DN 1] ¶ 3.) Additionally, Defendants contend removal is proper because the face of Plaintiff's Complaint asserts a claim for benefits under an employee benefit plan established under and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* As this claim falls within ERISA's specific enforcement provision, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), ERISA completely preempts Plaintiff's claims against UniCare.  (Def.'s Removal Notice [DN 1] ¶ 2.)

On September 25, 2014, Plaintiff filed this Motion to Remand [DN 9] the case to Jefferson Circuit Court arguing that this Court lacks subject matter jurisdiction.  Plaintiff asserts

that Defendant Ford's claim that this Court has jurisdiction based on the LMRA is unavailing. Additionally, Plaintiff contends that Defendant UniCare's argument that ERISA preempts this suit fails as a matter of law because Plaintiff is relying on theories outside the scope and intent of ERISA. As there is not complete diversity between the parties, Plaintiff maintains that the case must be remanded pursuant to 28 U.S.C. § 1447(c).

## II. STANDARD OF REVIEW

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing that the district court has original jurisdiction. Eastman v. Marine Mech. Corp., 438 F.3d 544, 549 (6th Cir. 2006). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). One category of cases of which district courts have original jurisdiction is "federal question" cases: cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule," Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004), i.e., whether a federal question "is presented on the face of the plaintiff's properly pleaded complaint," Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. Accordingly, "the existence of a federal defense normally does not create" federal-question jurisdiction, Davila, 542 U.S. at 207, and "a defendant may not [generally] remove a case to federal court unless the *plaintiff*'s complaint establishes that the case 'arises under'

federal law," id. (alteration in original) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10 (1983)) (internal quotation marks omitted).

However, a corollary or exception to the well-pleaded complaint rule exists: the complete preemption doctrine.  "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state-law claim arises under federal law and can be removed. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).  Removal is permitted in this context because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  Id.; Caterpillar, 482 U.S. at 393 (noting that complete preemption creates federal question jurisdiction when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule'").  The Supreme Court has found only three statutes that evince congressional intent to completely preempt a field: § 301 of the LMRA, 29 U.S.C. § 185, see Avco Corp. v. Aero Lodge No. 735, International Ass'n of Machinists, 376 F.2d 337, 339–40 (6th Cir. 1967), aff'd,  390 U.S. 557, 560 (1968); § 502(a) of ERISA, 29 U.S.C. § 1132(a), see Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63–66 (1987); and §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86, see Beneficial National Bank, 539 U.S. at 10–11.  Any complaint that purports to assert a state law claim within the scope of one of these three federal causes of action "necessarily 'arises under' federal law."  Franchise Tax Bd., 463 U.S. at 23–24.

## III. DISCUSSION

In determining whether removal of this action to federal court was proper, the Court must determine whether the LMRA completely preempts any of Plaintiff's state law claims.  Having

considered the parties' arguments, the Court is satisfied that at least one of Plaintiff's claims against the Defendants is completely preempted under the LMRA, and therefore this Court has subject matter jurisdiction over the action and removal was proper.[2]

## A.  Complete Preemption Under LMRA

Section 301 of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  As noted, the Supreme Court has recognized § 301 as one of only a few statutes that have complete preemptive force so as to authorize the removal of actions purporting to seek relief only under state law.  Beneficial Nat'l Bank, 539 U.S. at 7.  Section 301 governs claims founded directly on rights created by collective bargaining agreements, as well as claims that are substantially dependent on analysis of a collective bargaining agreement.  Caterpillar, 482 U.S. at 394.

"Given the importance of maintaining uniform federal law, the Supreme Court 'has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement.'"  Mattis v. Massman, 355 F.3d 902, 905 (6th Cir. 2004) (quoting Smolarek v. Chrysler Corp., 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc)).  Preemption under § 301 applies not only to state-law claims alleging contract violations, but has expanded to include state-law tort claims.  See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). Not every tort claim concerning employment or tangentially involving a provision of the CBA

---

[2] Similar to § 301 of the LMRA, ERISA § 502(a)(1)(B) also completely preempts state law claims that fall within its scope.  See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63–66 (1987).  Because the Court believes that complete preemption under the LMRA is dispositive of Plaintiff's motion, the Court will not address complete preemption under ERISA.

7

will be subject to preemption under § 301, however.  Id. at 211–12 ("In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").  To survive preemption under § 301, the tort claims must be "independent" of the CBA.  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409–10 (1988); Lueck, 471 U.S. at 213 (analyzing state-law claim to determine if it was "independent of any right established by contract, or, instead, whether evaluation of the tort claim [was] inextricably intertwined with consideration of the terms of the labor contract").

In Lueck, the Supreme Court considered whether a state-law tort claim for bad-faith handling of an insurance claim was preempted where the insurance plan provisions were included in a collective bargaining agreement.  In analyzing the state tort remedy, the Court explained that "the tort exists for breach of a 'duty devolv[ed] upon the insurer by reasonable implication from the express terms of the contract,' the scope of which, crucially, is 'ascertained from a consideration of the contract itself.'"  Lueck, 471 U.S. at 216 (alteration in original) (quoting Hilker v. W. Auto. Ins. Co., 235 N.W. 413, 415 (Wis. 1931)).  The Court found the state claim was preempted because an essential element of the tort required interpretation of the CBA regarding whether the plaintiff was due payments.  Because the duty claimed to have been breached was "derive[d] from the rights and obligations established by the contract," the Court reasoned that "any attempt to assess liability here inevitably will involve contract interpretation." Id. at 217–18.

By contrast, in Lingle, the Supreme Court held that the plaintiff's state-law tort claim of retaliatory discharge for filing a workers' compensation claim was not preempted by § 301. Upon examining the elements of the state-law claim, the Court reasoned that "the state-law

remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." <u>Lingle</u>, 486 U.S. at 407.  In so concluding, the Court rejected the argument that the state-law claim was inextricably intertwined with the CBA merely because it implicated the same factual analysis as would a grievance brought under the CBA's "just cause" provision.  <u>Id.</u> at 409–10 ("In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.").

Based on the Supreme Court's guiding principles, the Sixth Circuit has developed a two-step approach for determining whether § 301 preemption applies.  <u>Alongi v. Ford Motor Co.</u>, 386 F.3d 716, 724 (6th Cir. 2004) (citing <u>DeCoe v. Gen. Motors Corp.</u>, 32 F.3d 212, 216 (6th Cir. 1994)).

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms.  Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.  If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption.  However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

<u>DeCoe</u>, 32 F.3d at 216 (citations omitted).  That is, a state-law claim is preempted by § 301 either (1) if "the rights claimed by the plaintiff were created by the collective bargaining agreement [rather than] by state law," or (2) if "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement."  <u>Mattis</u>, 355 F.3d at 906 (citing <u>DeCoe</u>, 32 F.3d at 216).

With respect to the latter inquiry, courts must ask whether a plaintiff can prove the elements of his state-law claim without contract interpretation.  DeCoe, 32 F.3d at 216.  "In order to make [this] determination, the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort."  Id. (citing Terwilliger v. Greyhounds Lines, Inc., 882 F.2d 1033, 1037 (6th Cir. 1989), cert. denied, 495 U.S. 946 (1990)).  "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement."  Id.  A defendant's reliance on the CBA as an affirmative defense will not turn an otherwise independent claim into a claim dependent on the CBA.  Id.

Using the approach established in DeCoe, the Court now evaluates Plaintiff's state-law claims.

### 1.  Count VI: Tortious Interference with a Contract

Although Plaintiff labels Count VI "Tortious Interference with a Contract," the Court finds that the claim is in actuality a claim for breach of contract—the CBA—against Defendants. See Paul v. Kaiser Found. Health Plan of Ohio, 701 F.3d 514, 519 (6th Cir. 2012) (stating that the court must "look beyond the face of plaintiff's allegations and the labels used to describe her claims and . . .  evaluate the *substance* of plaintiff's claims").  In his Complaint, Plaintiff asserts that "as a UAW member" he has a "multitude of contractual rights" created by the CBA "that Defendant Ford is obligated to uphold," which he contends were breached by Defendants Ford, Marzian, and Morrison.  (Compl. [DN 1-2] ¶¶ 117–130.)

To prevail on a tortious interference with a contract claim in Kentucky, a plaintiff must prove: (1) the existence of a contract; (2) a third party's knowledge of the contract; (3) that the

third party intended to cause a breach of that contract; (4) that the third party did indeed cause a breach; (5) that this breach resulted in damages to the plaintiff; and (6) that the third party had no privilege or justification to excuse its conduct.  <u>Dennison v. Murray State Univ.</u>, 465 F. Supp. 2d 733, 755 (W.D. Ky. 2006).  Thus, tortious interference with a contract claims involve a third party's interference with a plaintiff's contract.  Here, Plaintiff is not alleging that a third party to the CBA interfered with the agreement.  Instead, Plaintiff alleges that Defendant Ford, a party to the CBA, breached the agreement, and also violated Plaintiff's rights created by the CBA. [3]

The Supreme Court "has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement."  <u>Smolarek</u>, 879 F.2d at 1329. Because the claim alleges breach of the CBA and the rights claimed by Plaintiff were created by the CBA, the Court finds that § 301 completely preempts Plaintiff's claim.  <u>DeCoe</u>, 32 F.3d at 216; <u>see</u> <u>Lueck</u>, 471 U.S. at 211 ("Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.").  Accordingly, Count VI is cause of action within the Court's original jurisdiction, 28 U.S.C. § 1331.

### 2.  Count VII: Violation of KRS 344.045

Looking at the essence of Plaintiff's Count VII for "violation of KRS § 344.045,"[4] the Court finds that it also is in substance a claim for breach of the CBA.  <u>See</u> <u>Alongi</u>, 386 F.3d at 727 ("[T]he doctrine of complete preemption goes beyond the usual contours of the well-pleaded

---

[3] Moreover, even if the facts as alleged supported a claim for tortious interference with a contract, § 301 of the LMRA would completely preempt that claim.  Where state tort law for interference with a contract requires a plaintiff to prove contract breach as an element of the claim, as Kentucky law does, the Sixth Circuit has held that § 301 preemption applies.  <u>DeCoe</u>, 32 F.3d at 217–18.  Thus, even if Plaintiff had actually alleged a claim for tortious interference with a contract, it would be completely preempted under § 301 of the LMRA and thus within the Court's original jurisdiction and removal of the claim would be proper.

[4] "In effectuating the purposes of [the Kentucky Civil Rights Act] no employer, as defined in KRS 344.030, shall establish any employment practices affecting the terms, conditions, and privileges of employment in derogation of an established seniority system or which contravenes an existing collective bargaining agreement." KRS 344.045.

complaint rule, in that it requires courts to attend to the underlying substance of a plaintiff's cause of action, and not merely whether it is denominated as arising from state or federal law."). Plaintiff's Complaint alleges that "Plaintiff *has vested seniority through a collective bargaining system*, namely, the UAW, Local 862."  (Compl. [DN 1-2] ¶ 137 (emphasis added).)  "Defendant Ford *violated their collective bargaining agreement and seniority system*," according to Plaintiff, "*by not following UAW contractual obligations* pertaining to NWA status, grievance procedures, wages, benefits, and discrimination policies."  (Id. ¶ 138 (emphasis added).)  Plaintiff asserts that, as a result of this violation, his "contractual rights, seniority, and collective bargaining system" and "UAW, Local 862 membership" were interfered with.  (See id. ¶¶ 139–140.)

All of the rights Plaintiff alleges were violated are created by the CBA, and thus are not founded independently in state tort law.  See Caterpillar, 482 U.S. at 399 ("When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.").  Furthermore, determining whether any of these rights were violated requires a determination of whether Defendant Ford breached the CBA and seniority system.  Thus, in order to resolve Plaintiff's claim, the Court would be required to interpret the terms and provisions of the CBA.

The Court finds that Plaintiff's Count VII is in substance a claim for breach of the CBA, alleging violation of rights created by the CBA, and that resolution of Plaintiff's claim is substantially dependent on an analysis of the terms of the CBA, Lueck, 471 U.S. at 220. Accordingly, the claim is completely preempted by § 301 and thus is a cause of action within the Court's original jurisdiction, 28 U.S.C. § 1331.

### 3.   Count IX: Failure to Protect

Plaintiff's failure to protect claim is also subject to complete preemption under § 301 of the LMRA.   Plaintiff's Complaint alleges "[t]hat Defendant Ford, *through its contractual agreement with the UAW has a duty to protect* all union members from harassment, discrimination, bullying, and ensure its contractual obligations are met."   (Compl. [DN 1-2] ¶ 146 (emphasis added); <u>see also</u> <u>id.</u> ¶ 24 ("Plaintiff is a member of UAW Local 862, a [sic] organized labor union.").)   "Defendant Ford, through Defendants Marsden [sic], Morrison, and UniCare[,] *breached that duty*" according to Plaintiff, "when they engaged in a [sic] ongoing series of events to force Plaintiff to resign, strip seniority, extinguish health benefits, dismiss Plaintiff's claims, and allow Plaintiff to be treated differently than other employees."   (<u>Id.</u> ¶ 147 (emphasis added).)

Plaintiff is essentially raising a state-law tort claim asserting that Defendants breached a duty owed to Plaintiff that was created by the CBA.   The duty Plaintiff alleges he is owed by Defendant Ford arises "through [Ford's] contractual agreement with the UAW"—the CBA— acknowledging that the right is not founded independently in state tort law.   <u>See</u> <u>Lueck</u>, 471 U.S. at 217.   Furthermore, in order to resolve Plaintiff's claim, the Court would be required to interpret the CBA to determine, first, whether the CBA in fact placed a duty to protect on Defendant Ford and, second, the nature and scope of that duty.   <u>See</u> <u>Int'l Bhd. of Elec. Workers v. Hechler</u>, 481 U.S. 851, 862 (1987).   Thus, the duty imposed and right asserted derives solely from the CBA and any assessment of liability inevitably will involve contract interpretation.   <u>See</u> <u>Lueck</u>, 471 U.S. at 217–18.   Accordingly, the Court concludes that Plaintiff's failure to protect claim is completely preempted by § 301 of the LMRA and thus is a cause of action within the Court's original jurisdiction, 28 U.S.C § 1331.

### 4.  Plaintiff's Argument

Other than stating that Defendants' argument is unavailing, the Court notes that Plaintiff did not actually address whether § 301 of the LMRA completely preempts any of his claims. Instead, Plaintiff cites law regarding hybrid § 301/fair representation claims,[5] which is inapplicable to this case, as Plaintiff is not asserting any such claims.  See Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 101 n.9 (1962).  Even in his reply brief, Plaintiff failed to address the proper issue.  Instead, Plaintiff merely stated:

> An employee may file an individual suit for breach of a collective bargaining agreement under the LMRA.  Smith v. Evening New Ass'n, 371 U.S. 195 (1962) (held that **state court had jurisdiction** of action by employee against employer for damages resulting from alleged violation of collective bargaining agreement although the alleged conduct of the employer was an unfair labor practice within the jurisdiction of the National Labor Relations Board).
>
>      . . . Further, the claims against Defendant Ford have significant roots in violations of fair dealing and representation.  The conduct that has been sufficiently plead [sic] details a vast repudiation of collective bargaining procedures.

(Pl.'s Rep. [DN 13] 4.)  Plaintiff is correct that Smith established that an individual employee, not just a union, may bring suit against an employer for breach of a collective bargaining agreement.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983).  However, the problem with relying on Smith for support that Plaintiff's claims are not completely preempted by § 301 is that Smith was not a § 301 preemption case, but rather involved preemption under San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236 (1959).  As the Sixth Circuit has explained:

> The goal of Garmon preemption is preservation of the National Labor Relations Board's primary jurisdiction over conduct violative of sections 7 and 8 of the

---

[5] A hybrid § 301/fair representation claim, as a formal matter, comprises two causes of action, one against the employer and one against the union.  "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement.  The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act."  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983).

> National Labor Relations Act, 29 U.S.C. §§ 157 and 158.  As such, the <u>Garmon</u> preemption test, which involves a balancing of state and federal interests, is inapplicable to section 301 preemption, which implicates Supremacy Clause concerns.

<u>DeCoe</u>, 32 F.3d at 219; <u>see</u> <u>Lueck</u>, 471 U.S. at 213 n.9.  The issue in <u>Smith</u> was whether the NLRB had exclusive jurisdiction over the action, such as would deprive the courts of jurisdiction.  371 U.S. at 196–97.

To the extent that Plaintiff is relying on <u>Smith</u> for the proposition that state courts have jurisdiction over § 301 suits as an argument for remand, that argument also fails.  It is undisputed that state courts have concurrent jurisdiction over § 301 claims.  <u>See</u> <u>Charles Dowd Box Co. v. Courtney</u>, 368 U.S. 502 (1962).  The plaintiff in <u>Smith</u> brought suit in state court under § 301 of the LMRA and the defendant did not chose to remove the action.  Here, however, Defendants chose to remove the case.  Thus, Plaintiff's arguments for remand are wholly inapplicable to this case.

For the foregoing reasons, the Court concludes that at least one of Plaintiff's claims is subject to complete preemption under § 301 of the LMRA and thus is within the Court's original jurisdiction.  <u>See</u> 28 U.S.C. § 1331.  Therefore, this case was removed properly pursuant to 28 U.S.C. § 1441(a).

**B.  Supplemental Jurisdiction Over Remaining Claims**

Having determined that the LMRA completely preempts at least one of Plaintiff's claims and thereby gives the Court independent federal subject matter jurisdiction, the Court must determine whether to exercise supplemental jurisdiction over the remainder of Plaintiff's claims under 28 U.S.C. § 1367.

Subject to certain specific exceptions not applicable here,[6] § 1367 provides that a federal district court hearing claims over which there is original jurisdiction shall have supplemental jurisdiction over all other claims that "form part of the same case or controversy under Article III of the United States Constitution" as the original claim.  28 U.S.C. § 1367(a).  In order to exercise supplemental jurisdiction, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction.  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Second, "[t]he state and federal claims must derive from a common nucleus of operative fact," such that, a plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  Id.  The decision to exercise supplemental jurisdiction is within the district court's discretion, and in making the decision, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing Gibbs, 383 U.S. at 726–27).

As explained above, at least some of Plaintiff's claims are subject to complete preemption under § 301 of the LMRA and therefore give rise to federal subject matter jurisdiction.  The only question, then, is whether any remaining state law claims arise from the same common nucleus operative fact.  Here, all of Plaintiff's claims arise from a common nucleus of operative facts—the events surrounding his work-related injury and employment with Defendant Ford.  The values of judicial economy, convenience, and fairness are all served by the Court's exercise of supplemental jurisdiction over any non-preempted state law claims.  Gibbs, 383 U.S. at 726.

For the reasons discussed above, the Court has original jurisdiction over the action, and it chooses to exercise supplemental jurisdiction over any of Plaintiff's claims that federal law does

---

[6] See 28 U.S.C. § 1367(b).

not completely preempt.  See 28 U.S.C. § 1367(a).[7]  Accordingly, Plaintiff's Motion to Remand is denied.

IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [DN 9] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 21, 2015

cc: counsel of record

---

[7] The Court notes that its decision—to exercise supplemental jurisdiction over any of Plaintiff's claims that are not completely preempted—is necessarily provisional.  United Mine Workers v. Gibbs, 383 U.S. 715, 727 (1966).