## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:14-CV-00594-JHM**

**KEITH SAUNDERS**                                                                    **PLAINTIFF**

**V.**

**FORD MOTOR COMPANY, JEFF MARSDEN,**                              **DEFENDANTS**
**KAREN MORRISON, and UNICARE LIFE**
**AND HEALTH INSURANCE COMPANY**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant UniCare Life and Health Insurance Company ("UniCare") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [DN 7], and on motions by Plaintiff Keith Saunders to supplement his response and the record [DN 14] and to amend his complaint [DN 19]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant UniCare's Motion to Dismiss is **GRANTED**, Plaintiff's Motion to Amend is **GRANTED in part** and **DENIED in part**, and Plaintiff's Motion to Supplement is **DENIED** as moot.

### I. BACKGROUND

Plaintiff Keith Saunders began working for Defendant Ford Motor Company ("Ford") in July 2001. (Compl. [DN 1-2] ¶ 9.) Plaintiff is a member of a bargaining unit, Local 862 of the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). (Id. ¶ 24.) As a union worker, Plaintiff's employment is governed by the collective-bargaining agreement ("CBA") entered into by UAW Local 862 and Ford. Pursuant to the CBA, Ford provides its eligible employees with disability and accident/sickness benefits under an employee welfare benefit plan (the "Plan"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The Plan is self-funded; it does not

purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants.  Ford is the Plan Administrator for the Plan, for which Defendant UniCare acts as the claims processor for disability and accident/sickness benefits, which are paid by Ford.

In 2001, while working at Ford's Minnesota facility, Plaintiff sustained work-related injuries, which worsened in 2006.  As a result of these injuries, Plaintiff was placed on permanent work restrictions.  Plaintiff's workers' compensation claim arising from 2001 is still ongoing with Defendant Ford.

In December 2011, Plaintiff was relocated to the Louisville Assembly Plant.  Plaintiff alleges that upon relocation, he was stripped of his seniority and placed in a job that violated his work restrictions.  According to Plaintiff, he requested accommodation for his disabilities, but Defendant Ford refused to reevaluate him, advising Plaintiff that the company doctors felt as though Plaintiff could "perform the functions of the position without restriction."  (Id. ¶ 27.)

On February 1, 2013, Plaintiff filed a charge of discrimination based on disability and failure to provide reasonable accommodation with the Equal Employment Opportunity Commission ("EEOC").  According to Plaintiff, around five days after filing the charge, he was placed on "No Work Available" ("NWA") status and put off of work by Defendant Jeff Marzian[1] ("Marzian"), Superintendent of the Louisville plant, which Plaintiff contends was in violation of the CBA.  (Id. ¶¶ 30–32.)  Plaintiff subsequently filed a grievance with his union representative in April 2013, alleging that Ford had violated the CBA without justification and requesting that Plaintiff receive eighty days' pay for lost wages because of being placed on NWA status.

In spring 2013, Plaintiff, Defendant Ford, through Defendant Karen Morrison ("Morrison"), Labor Relations Supervisor at the Louisville plant, and the EEOC engaged in mediation.  As a result of the mediation, Plaintiff was placed back to work in the trim

---

[1] Improperly identified in the Complaint as "Jeff Marsden," but corrected in Plaintiff's Amended Complaint.

department, in a position which met his work restrictions.  Around three weeks later, Ford informed Plaintiff that there was no longer any work available in the trim department and moved him to another department.  Plaintiff contends that there was still work available in the trim department at that time and that his new position, although it did not violate his work restrictions, was below his seniority level.  (Id. ¶¶ 39–40.)  According to Plaintiff, another employee not named in this action repeatedly harassed Plaintiff while he performed his new job, by making statements like "you're loitering" and "you can't do shit."  (Am. Compl. [DN 19-1] ¶ 43.)  Because of that harassment and other work-related treatment, Plaintiff states he checked himself into a medical facility for anxiety, depression, and stress, where he stayed for approximately six weeks between October and December 2013.  (Compl. [DN 1-2] ¶¶ 42–44.)

During the time Plaintiff was in the hospital, he received health benefits from Defendant UniCare, pursuant to Ford's self-funded ERISA benefits plan.  (Id. ¶ 53.)  Plaintiff was released and cleared to return to work around December 16, 2013.  (Id. ¶ 45.)  Sometime after December 16, 2013, Plaintiff alleges that UniCare stopped paying him benefits, despite that he was still being treated for depression and anxiety stemming from work-related treatment.  (Id. ¶ 54.)  On January 27, 2014, UniCare started sending Plaintiff benefits again and allegedly acknowledged that they should not have stopped paying Plaintiff benefits.  (Id. ¶ 55.)  According to Plaintiff, "UniCare has substantially limited monetary relief to Plaintiff."  (Id. ¶ 65.)

Also on December 16, 2013, Plaintiff filed a second grievance with UAW Local 862, which he alleges has not been sufficiently addressed.  Plaintiff contends that he contacted Labor Relations about finding him a position, which in turn contacted Defendant Marzian.  According to Plaintiff, Defendant Marzian did not exhaust any zones to find Plaintiff a position and instead immediately placed him on NWA status, which Plaintiff contends was a violation of the CBA.

(Id. ¶ 51.)  Plaintiff additionally asserts that Defendants Ford and Marzian did not wait for the Job Placement Committee to meet and make a determination regarding Plaintiff before placing him on NWA status, which Plaintiff contends also violated the CBA.  (Id. ¶ 52.)

In May 2013, Plaintiff contends that Defendant Morrison refused to place Plaintiff back to work even though allegedly he had been called back to work, because she believed he had signed a workers' compensation agreement and resigned from Defendant Ford.  (Id. ¶ 62.) According to Plaintiff, in early June 2014 the UAW informed him that the UAW system showed that Plaintiff had been discharged as of May 16, 2014, when in fact he had not been.  (Id. ¶ 63.) Plaintiff states that since that time he was placed in a temporary position in violation of his rights under the CBA.  (Id. ¶ 64.)

On July 30, 2014, Plaintiff filed this action in Jefferson Circuit Court against Ford, two of its employees, Marzian and Morrison, and UniCare.  In his complaint, Plaintiff raised twelve state-law claims against Defendants: (1) disability-based discrimination in violation of the Kentucky Civil Rights Act ("KCRA"), KRS 344.040; (2) retaliation in violation of the KCRA; (3) retaliation for filing a workers' compensation claim in violation of KRS 342.197(1); (4) wage and hour violations; (5) violation of Kentucky's insurance laws; (6) tortious interference with a contract; (7) violation of KRS 344.045; (8) negligent infliction of emotional distress; (9) failure to protect; (10) negligent hire/retention/supervision; (11) promissory estoppel; and (12) civil conspiracy.  Seven of those claims are against Defendant UniCare; specifically, unamended Counts 2, 3, 6, 8, 9, and 12 are asserted against both Defendant UniCare and other named Defendants and unamended Count 5 is against UniCare alone.

On August 26, 2014, Defendants removed this action alleging federal question jurisdiction.  Following removal, Defendant UniCare moved to dismiss [DN 7] the claims

against it on September 2, 2014, contending that Plaintiff failed to state a claim upon which relief can be granted.  Plaintiff subsequently filed a motion to remand [DN 9], which this Court denied by Order [DN 16] dated January 22, 2015, finding that at least some of Plaintiff's claims were completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and asserting supplemental jurisdiction over the remaining state law claims.

On September 26, 2014, Plaintiff filed a Response to UniCare's Motion to Dismiss [DN 10], in which he did not oppose the dismissal of unamended Counts 3 (violation of KRS chapter 342), 6 (tortious interference with contract), 8 (negligent infliction of emotional distress), and 9 (failure to protect) with prejudice.  On January 5, 2015, Plaintiff filed a Motion to Supplement Response and Record with Newly Discovered Evidence [DN 14] regarding his Response to Defendant UniCare's Motion to Dismiss [DN 10].  The "newly discovered evidence" Plaintiff sought to enter into the record was an unauthenticated alleged draft workers' compensation settlement from Minnesota, which lists the same attorney as representing Defendants Ford and UniCare (see [DN 14-1]).  Defendant UniCare was the only defendant to respond to this motion [DN 17].  Instead of filing a reply brief to Defendant UniCare's Response, Plaintiff filed a Motion to Amend his complaint [DN 19] on February 11, 2015, attaching to the Amended Complaint the draft workers' compensation settlement.  Defendant UniCare was also the only defendant to respond to the motion to amend [DN 20].

## II. STANDARD OF REVIEW

### A.  Motion to Dismiss

Upon a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir.

2007), "accept all well-pled factual allegations as true," id., and determine whether the "complaint states a plausible claim for relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "'merely consistent with' a defendant's liability," id. at 678 (quoting Twombly, 550 U.S. at 557), or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct," id. at 679. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.  Motion to Amend

Plaintiff's motion for leave to file an amended complaint is governed by Federal Rule of Civil Procedure 15(a)(2), which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A district court should freely grant leave "when justice so requires." Id. However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 520 (6th Cir. 2010) (quoting Rose v. Hartford Underwriters

Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000)) (internal quotation marks omitted).

## III. DISCUSSION

Defendant UniCare moves to dismiss all of Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that (1) Plaintiff's bare facts pled against UniCare do not state a claim under state law and (2) any claim against UniCare is preempted by ERISA.  In addition to his response to the motion to dismiss, Plaintiff moves to amend his complaint to (1) assert additional facts based on "newly discovered evidence" regarding the alleged conspiracy, which Plaintiff contends will defeat UniCare's Motion to Dismiss; (2) add specific provisions of Kentucky's insurance law to Count 5; (3) amend Count 6 from a tortious interference with a contract claim to a breach of contract claim; (4) amend Count 8 from negligent infliction of emotional distress to simply "infliction of emotional distress"; and (5) remove Counts 9 (failure to protect) and 11 (promissory estoppel).  In his motion to amend briefs, Plaintiff appears to be arguing that the "newly discovered evidence" of Defendant Ford and Defendant UniCare having the same lawyer for purposes of an alleged workers' compensation settlement agreement in Minnesota equates to prima facie evidence of those Defendants having engaged in an unlawful scheme, which, according to Plaintiff, will defeat Defendant UniCare's Motion to Dismiss.  (See Pl.'s Mem. Supp. Mot. Amend Compl. [DN 19] 2; Pl.'s Rep. Supp. Mot. Amend Compl. [DN 21] 2.)

Defendant UniCare contends that Plaintiff's Motion to Amend is futile, and thus must be denied.[2]  For the sake of simplicity, the Court will address Plaintiff's amended allegations as if they were included in Plaintiff's first complaint.  After all, the standard for futility mirrors the review applied in motions to dismiss.  Midkiff v. Adams Cnty. Reg'l Water Dist., 409 F.3d 758,

---

[2] Defendant UniCare additionally argues that the Court should deny Plaintiff's Motion to Amend because the proposed amendment is the result of undue delay and is prejudicial to Defendants.

767 (6th Cir. 2005) (quoting <u>Martin v. Associated Truck Lines, Inc.</u>, 801 F.2d 246, 249 (6th Cir. 1986)) ("A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'").

In his Amended Complaint, Plaintiff makes six[3] claims against Defendant UniCare: (1) retaliation; (2) retaliation for filing a workers' compensation claim; (3) violation of Kentucky insurance laws; (4) breach of contract; (5) infliction of emotional distress; and (6) civil conspiracy.  Defendant UniCare contends that (1) Plaintiff's claims alleging retaliation and conspiracy fail because Plaintiff has failed to allege sufficient facts to establish those claims; (2) Plaintiff's claims alleging violation of various Kentucky insurance laws fail as a matter of law because ERISA preempts state regulation of Ford's self-funded Plan; (3) Plaintiff's claim alleging breach of the collective bargaining agreement fails as a matter of law because this Court previously held the claim preempted by LMRA § 301; and (4) Plaintiff's claims alleging "infliction of emotional distress" fail because Plaintiff has failed to allege sufficient facts to establish a claim under either a negligence or intentional theory.

### A.  Counts 2 and 10 – Retaliation and Conspiracy to Retaliate

Plaintiff alleges that Defendant UniCare retaliated against and conspired with Defendant Ford to retaliate against Plaintiff for requesting reasonable accommodation and filing a complaint with the EEOC, in violation of KRS 344.280 (Counts 2 and 10).[4]

#### 1.  Count 2 – Retaliation

The KCRA provides that "[i]t shall be an unlawful practice for a person, or for two (2) or more persons to conspire: (1) [t]o retaliate or discriminate in any manner against a person

---

[3] In his original Complaint, Plaintiff asserted one additional claim against Defendant UniCare (as well as other Defendants): failure to protect.  (See Compl. [DN 1-2] Count IX.)  In his Amended Complaint, Plaintiff removed the failure to protect claim as to all Defendants.

[4] Count 10 in the Amended Complaint is Plaintiff's civil conspiracy claim, which is Count 12 in Plaintiff's original Complaint.

because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." KRS 344.280(1). To state a claim for retaliation under KRS 344.280, a plaintiff must allege: (1) that plaintiff engaged in an activity protected by the KCRA; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth., 132 S.W.3d 790, 803 (Ky. 2004).

Defendant UniCare first argues that it, as a third party claims processor, is not a proper defendant for Plaintiff's employment and labor retaliation claims (Counts 2, 3, and 10). Plaintiff argues that liability for a violation of KRS 344.280 attaches to individuals, see Brooks, 132 S.W.3d at 808, "which can be construed as UniCare for the simple fact that they are not Plaintiff's employer and have engaged in coercion and interfered with Plaintiff's protected activity- to be free from discrimination because of his permanent disability." (Pl.'s Resp. to Def. UniCare's Mot. Dismiss [DN 10] 5–6.) The Sixth Circuit has stated that, unlike Title VII, which forbids retaliation by "an employer," see 42 U.S.C. § 2000e–3(a), "[t]he Kentucky retaliation statute plainly permits the imposition of liability on individuals," as KRS 344.280 forbids retaliation by "a person,"[5] see KRS 344.280. Morris v. Oldham Cnty. Fiscal Ct., 201 F.3d 784, 794 (6th Cir. 2000) (finding that a supervisor could be held individually liable for retaliatory harassment under KRS 344.280). As Defendant UniCare is a "person" under the KCRA

---

[5] The definitions of the KCRA provide:

"Person" includes one (1) or more individuals, labor organizations, joint apprenticeship committees, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, fiduciaries, receivers, or other legal or commercial entity; the state, any of its political or civil subdivisions or agencies.

KRS 344.010(1).

definition, see KRS 344.010(1), it appears that Defendant UniCare could be a proper defendant under KRS 344.280.

Defendant UniCare also argues that Plaintiff has failed to allege sufficient facts to show that he is entitled to relief against UniCare for retaliation under the KCRA.  In his Amended Complaint, Plaintiff alleges "[t]hat Defendant Ford, through Defendants Marzian, Morrison, and UniCare have conspired to retaliate against Plaintiff for exercising his rights to a reasonable accommodation and seek treatment for mental health issues," (Am. Compl. [DN 19-1] ¶ 105), and "[t]hat Defendant Ford, through Defendant UniCare, intentionally and negligently cut off Plaintiff's health insurance or supplemental insurance benefits for periods of time and both Defendant Ford and Defendant UniCare underhandedly hired the same lawyer to coerce Plaintiff into terminating this lawsuit- 3: 14-cv-00594-JHM-DW, by abusing a Worker's Compensation proceeding in the state of Minnesota," (id. ¶ 107).  Plaintiff's allegation that Defendants Ford and UniCare "conspired to retaliate against Plaintiff for exercising his rights to a reasonable accommodation and seek treatment for mental health issues" is a mere legal conclusion and, as such, is not entitled to the assumption of the truth.  See Iqbal, 556 U.S. at 680 (citing Twombly, 550 U.S. at 555) ("In [holding the plaintiff's complaint deficient under Rule 8, the Twombly Court] first noted that the plaintiffs' assertion of an unlawful agreement was a 'legal conclusion' and, as such, was not entitled to the assumption of the truth.").

Plaintiff has pled that he engaged in protected activity—filing grievances with his union and a charge with the EEOC because of alleged discrimination based on disability.  (See Am. Compl. [DN 19-1] ¶¶ 103–104.)  Plaintiff seems to allege the adverse employment action taken by Defendant UniCare is the 43-day gap in benefits payments between December 2013 and

January 2014.[6]  (See id. ¶ 107 (alleging that "Defendant Ford, through Defendant UniCare intentionally and negligently cut off Plaintiff's health insurance or supplemental insurance benefits for periods of time").)  However, Plaintiff has not pled that Defendant UniCare had knowledge, at the time of the gap in benefit payments, of Plaintiff's protected activity.  Further, Plaintiff has not pled facts that the gap in benefit payments was done with retaliatory intent by UniCare or that establish a causal connection between the gap in benefit payments and Plaintiff's protected activity.  As such, Plaintiff has failed to allege necessary elements of a claim for retaliation under the KCRA against Defendant UniCare.

## 2.  Count 10 – Civil Conspiracy

Under Kentucky law, a claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (quoting Smith v. Bd. of Educ. of Ludlow, 94 S.W.2d 321, 325 (Ky. 1936)) (internal quotation marks omitted).  The elements of a civil conspiracy are: (1) an agreement or combination, (2) that is unlawful or corrupt, (3) entered into by two or more persons, (4) for the purpose of accomplishing an unlawful goal.  Ellington v. Fed. Home Loan Mortg. Corp., 13 F. Supp. 3d 723, 730 (W.D. Ky. 2014).  Further, "the law in Kentucky requires the actual commission of the tortious act or a concert of action where substantial assistance has been provided in order for liability to attach based on a civil conspiracy theory." James v. Wilson, 95 S.W.3d 875, 897–98 (Ky. Ct. App. 2002).  In Kentucky, "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff

---

[6] The Court is not convinced that a 43-day gap in benefit payments by a claims processor constitutes a "materially adverse change in the terms and conditions of [Plaintiff's] employment," Brooks v. Lexington-Fayette Urban County Housing Authority, 132 S.W.3d 790, 802 (Ky. 2004) (defining adverse employment action). However, this argument was not raised by the parties, and because the Court finds on other grounds that Plaintiff has failed to state a claim for retaliation under KRS 344.280 against Defendant UniCare, the Court does not address it.

may recover from multiple defendants for an underlying tort." <u>Stonestreet Farm, LLC v.</u>
<u>Buckram Oak Holdings, N.V.</u>, No. 2008-CA-002389-MR, 2010 WL 2696278, at *13 (Ky. Ct.
App. July 9, 2010).

With respect to UniCare, Plaintiff alleges, in his Amended Complaint, that Defendants
Ford and UniCare "have engaged in overt acts in concert with each other to accomplish an
unlawful scheme," (Am. Compl. [DN 19-1] ¶ 188), and that "one of the purposes of Defendant
Fords scheme with UniCare was to retaliate against Plaintiff for filing additional charges,
grievances, and EEOC complaints," (<u>id.</u> ¶ 184). In addition, Plaintiff alleges in his Amended
Complaint that "Defendant Ford has conspired with Defendant UniCare to coerce Plaintiff to
waive his rights to sue and resign from Defendant Ford through a Workers Compensation
settlement," (<u>id.</u> ¶ 182), and that "Defendant Ford acted in concert with Defendant UniCare to
selectively cut off insurance benefits in an effort to coerce Plaintiff to settle his Workers
Compensation claims which also constitutes retaliation in violation of KRS §344.280," (<u>id.</u> ¶
183). Plaintiff argues that his complaint "clearly shows an unlawful/corrupt combination or
agreement between Defendants Ford and UniCare to do by concerted action an unlawful act—
discrimination on the basis of disability. Specifically, that Ford used their power and influence
with UniCare to selectively cut off insurance benefits in an effort to coerce Plaintiff to settle his
Workers Compensation claims which also constitutes retaliation in violation of KRS §344.280."
(Pl.'s Resp. to Def. UniCare's Mot. Dismiss [DN 10] 5 (citing Compl. [DN 1-2] ¶ 173).)
Further, Plaintiff argues that "[a]ny objective view of the verified Complaint shows that more
likely than not, UniCare acted with Defendant Ford to coerce Plaintiff into accepting a Worker's
Compensation agreement by withholding funds and leaving Plaintiff no other choice but to sign

his rights away to protect himself- which Plaintiff did not do." (Pl.'s Resp. to Def. UniCare's Mot. Dismiss [DN 10] 6.)

Defendant UniCare argues that the Court should dismiss Plaintiff's conspiracy claim as to UniCare because Plaintiff has failed to allege sufficient facts to state a plausible claim for relief. Specifically, UniCare argues that Plaintiff has "failed to plead facts indicating that UniCare acted in any way in concert with the other defendants to somehow impose harm on Plaintiff. Instead, Plaintiff merely pleads that UniCare stopped, and then restarted, the payment of benefits. Thus, the only facts pled show individual action by UniCare, not concerted action in furtherance of a conspiracy." (Def. UniCare's Br. Supp. Mot. Dismiss [DN 7-1] 5 (citing Compl. [DN 1-2] ¶¶ 53–55, 65).) Further, Defendant UniCare argues that Plaintiff has failed to plead facts of an agreement between UniCare and any other Defendant to discriminate or retaliate against Plaintiff for engaging in protected activity.

The Court agrees with Defendant UniCare and finds that Plaintiff has not pled facts establishing that UniCare and any other Defendant entered into any unlawful agreement or that UniCare acted in concert with any other Defendant to retaliate against Plaintiff. Instead, much of the allegations in Plaintiff's Amended Complaint are threadbare recitals of a civil conspiracy cause of action, supported by mere conclusory statements, which will not suffice. Iqbal, 556 U.S. at 678. Plaintiff argues that Ford "used their power and influence with UniCare" to cause a 43-day gap in benefit payments; however, Plaintiff has failed to plead any facts in either complaint supporting that such a gap in benefit payments was done as a result of some directive by Ford or in conjunction with Ford. On various occasions in the Complaint and Amended Complaint, Plaintiff references that Ford acted "through" UniCare, (see, e.g., Am. Compl. [DN 19-1] ¶¶ 107, 115, 164); however, Plaintiff has failed to plead how the actions of Ford can be

attributed to UniCare or how the actions of UniCare can be attributed to Ford.  These are merely conclusory allegations unsupported by factual assertions that the Court must disregard for purposes of the motion to dismiss.  See Iqbal, 556 U.S. at 678.

Furthermore, Plaintiff pleads no facts indicating that Ford and UniCare discussed that the Plan benefits should be cut off for 43 days or that an agreement was reached between the two entities to retaliate against Plaintiff for engaging in protected activity.  See Peoples Bank, 277 S.W.3d at 261 (defining civil conspiracy as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means").  As discussed, Plaintiff has not alleged that Defendant UniCare even had knowledge at the time UniCare stopped paying benefits that Plaintiff engaged in protected activity.  The Court finds that Plaintiff's "bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a 'formulaic recitation of the elements' of a" civil conspiracy claim.  Iqbal, 556 U.S. at 681 (quoting Twombly, 550 U.S. at 555).  "As such, the allegations are conclusory and not entitled to be assumed true."  Id. (citing Twombly, 550 U.S. at 554–55).

Assuming the non-conclusory factual allegations Plaintiff pleads are true, the Court finds that they do not give rise to a plausible claim of conspiracy.  The gap in benefit payments and UniCare's acknowledgment that it should not have ceased payments for those 43 days are just as consistent with enforcing Plan terms as it is with Plaintiff's speculated unlawful scheme.  (See Def. UniCare's Rep. Supp. Mot. Dismiss [DN 11] 6 ("For example, UniCare may have been lacking certain information required to pay benefits during that time and later received it, or may have been misinformed as to certain aspects of Plaintiff's condition and later received corrected information showing benefits had been payable during that time.").)  "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Further, while Defendants Ford and UniCare having the same counsel for the purposes of the Minnesota workers' compensation settlement between Ford and Plaintiff may be consistent with an unlawful agreement, the Court finds that it does not plausibly suggest an illicit accord.  See Iqbal, 556 U.S. at 680.  Just as in Twombly, the Court finds that the well-pleaded, nonconclusory allegations in Plaintiff's proposed Amended Complaint do not give rise to a "plausible suggestion of conspiracy."  See Twombly, 550 U.S. at 565–66.

The Court concludes that the facts pled do not state a plausible claim for relief against Defendant UniCare for retaliation or conspiracy-to-retaliate in violation of KRS 344.280. Because these claims against UniCare cannot withstand a Rule 12(b)(6) motion to dismiss, Plaintiff's proposed amendment is futile as to UniCare.  See Riverview Health, 601 F.3d at 520. Accordingly, the Court denies leave to amend Counts 2 and 10 as to UniCare and dismisses Counts 2 and 10 against UniCare for failure to state a claim.

### B.  Count 3 – Retaliation for Filing a Workers' Compensation Claim

Count 3 alleges violation of the Kentucky Workers' Compensation Act ("KWCA"), specifically KRS 342.197, which prohibits retaliation against an employee for filing or pursuing a workers' compensation claim.[7]  (See Am. Compl. [DN 19-1] ¶¶ 111–112, 115–116.)  Under Kentucky law, a plaintiff alleging that he was retaliated against for filing a workers' compensation claim establishes a prima facie case by showing that: (1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the

---

[7] KRS 342.197 provides that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this [workers' compensation] chapter."  KRS 342.197(1).

adverse employment action. <u>Chavez v. Dakkota Integrated Sys., LLC</u>, 832 F. Supp. 2d 786, 800 (W.D. Ky. 2011) (citing <u>Dollar Gen. Partners v. Upchurch</u>, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006)); KRS 342.197(1).

It is unclear to the Court exactly what Plaintiff is claiming against Defendant UniCare in Count 3. From the complaints, it appears Plaintiff is alleging Defendant Ford retaliated against Plaintiff for filing a workers' compensation claim in violation of KRS 342.197 and did so by acting "through" the three other Defendants. Plaintiff mentions UniCare in Count 3 only when alleging Defendant Ford "through Defendant[] . . . UniCare . . . prematurely cut off insurance benefits," (Am. Compl. [DN 19-1] ¶ 115), and in the damages paragraph of the claim, stating "[t]hat Plaintiff having shown that Defendants Ford, Marzian, Morrison, and UniCare conspired to retaliate against him for exercising his rights under KRS 342," (<u>id.</u> ¶ 116).

Treating the claim as alleging that UniCare retaliated against Plaintiff, the Court first notes that it is unclear whether Defendant UniCare is a proper defendant for a workers' compensation retaliation claim. Defendant UniCare argues that as a third party claims processor of an ERISA employee benefit plan, it is not a proper defendant for Counts 2, 3, and 10, which all relate to employment and labor actions. Plaintiff wholly failed to respond to this argument as to Count 3 in either its response brief to Defendant UniCare's Motion to Dismiss or its Motion to Amend briefs. In <u>McGee v. Continental Mills, Inc.</u>, No. 5:09-CV-00155-R, 2009 WL 4825010 (W.D. Ky. Dec. 11, 2009), the plaintiff alleged that the defendants, the plaintiff's former employer and two of its employees, had conspired to wrongfully terminate her in violation of KRS 342.197. <u>Id.</u> at *1. The defendants argued that the plaintiff had failed to state a claim upon which relief may be granted against the two employees because liability for a violation of this provision runs only to the employer of the employee-plaintiff. <u>Id.</u> ("In other words, [the

employees] cannot be held individually liable under the KWCA.").  The court agreed, finding

that "[e]mployees . . . cannot be held individually liable for retaliatory discharge" and concluded

that the plaintiff had not established a cause of action against the defendant employees under the

KWCA.  Id. (quoting Bullard v. Alcan Aluminum Corp., 113 F. App'x 684, 690 (6th Cir. 2004))

("*An employer* may be held liable under KRS § 342.197(1) for retaliatory discharge if the jury

believes that the employee's pursuit of a workers' compensation claim was one of the substantial

factors motivating the discharge decision, notwithstanding proof that the employee would have

lawfully been discharged anyway.").   However, McGee and Bullard involved retaliatory

*discharge* claims, whereas the instant case does not.

Assuming without deciding that UniCare could be a proper defendant for a claim under

KRS 342.197, the Court finds that Plaintiff has failed to allege sufficient facts to show that he is

entitled to relief against Defendant UniCare for retaliation under KRS 342.197.  Plaintiff has

alleged that he engaged in a protected activity—he filed a workers' compensation claim against

Defendant Ford stemming from a 2001 injury at Ford's Minnesota plant.  (Am. Compl. [DN 19-

1] ¶ 111.)  The alleged adverse employment action taken by Defendant UniCare seems to be that

it "prematurely cut off insurance benefits."[8]  (See id. ¶ 115.)  However, Plaintiff does not allege

that this gap in benefit payments was taken because of Plaintiff's filing or pursuing a workers'

compensation claim or that Defendant UniCare even had knowledge that Plaintiff had made or

was pursuing such a claim.  Thus, Plaintiff has failed to allege necessary elements of a KRS

342.197 retaliation claim against Defendant UniCare.  Accordingly, the Court dismisses Count 3

against Defendant UniCare for failure to state a claim.

---

[8] As mentioned, the Court is not convinced that a 43-day gap in benefit payments by a claims processor
constitutes a "materially adverse change in the terms and conditions of [Plaintiff's] employment," Brooks v.
Lexington-Fayette Urban County Housing Authority, 132 S.W.3d 790, 802 (Ky. 2004).  However, this argument
was not raised by the parties, and because the Court finds on other grounds that Plaintiff has failed to state a claim
for retaliation under KRS 342.197 against Defendant UniCare, the Court does not address it.

### C.  Count 5 – Violation of Kentucky Insurance Laws

Plaintiff's original complaint alleged violation of KRS chapter 304 subtitle 18[9] by Defendant UniCare.[10]   In its Motion to Dismiss, Defendant UniCare contends that Plaintiff's Count 5 fails to state a claim against UniCare because Plaintiff cites to an entire subtitle in the Kentucky Insurance Code and fails to identify which specific sections Defendant UniCare allegedly violated.   (See Def. UniCare's Br. Supp. Mot. Dismiss [DN 7-1] 7.)   Further, Defendant UniCare argues that Kentucky's insurance laws do not apply to Ford's self-funded Plan, as they are preempted by ERISA.   (See id. at 7–8; Def. UniCare's Rep. Supp. Mot. Dismiss [DN 11] 7 (quoting FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990)) (alteration in original) ("[S]elf-funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the plans.").)

Plaintiff seeks to amend this claim by "pleading with particularity," i.e., adding code sections.  Specifically, Plaintiff's amended Count 5 alleges violation of KRS 304.9-440, 304.12-070, 304.12-110, 304.12-230, and 304.17A-844.   Plaintiff does not seem to respond to Defendant's argument regarding the inapplicability of Kentucky's insurance laws to the self-funded Plan under which UniCare acts as a claims processor.

The only potentially viable claim asserted by Plaintiff in amended Count 5 is one for insurance bad faith under KRS 304.12-230.  As a matter of law, Plaintiff fails to state a claim upon which relief can be granted under the other four statutes Plaintiff alleges were violated by

---

[9] Plaintiff's original complaint styles Count 5 as "Violation of KRS §304.18 et., seq. [sic]," although Plaintiff cites KRS 302.18 throughout the claim (see Compl. [DN 1-2] ¶¶ 107–115).   As KRS 302.18 does not exist, the Court presumes that KRS 304.18, the group and blanket health insurance subtitle of the insurance code chapter, is the section Plaintiff intended to allege a claim under.

[10] Unlike the other claims in Plaintiff's complaints, Count 5 is asserted against Defendant UniCare only.

Defendant UniCare.[11]   Whether Plaintiff's amended state law claim for insurance bad faith fails as a matter of law depends on whether the claim is preempted by ERISA.  See Hyde v. Hillerich & Bradsby Co., No. 3:11-CV-422-H, 2011 WL 4916520, at *1 (W.D. Ky. Oct. 17, 2011) ("A motion to dismiss for failure to state a claim should be sustained where a plaintiff asserts state law claims that are preempted by ERISA.").   ERISA's express preemption clause, § 514(a), states that the act "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan."  29 U.S.C. § 1144(a) (emphasis added).   The Supreme Court, in Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41 (1987), held that a state law insurance bad faith claim, based on alleged improper processing of a benefit claim under an ERISA employee benefit plan, "relate[s] to" an employee benefit plan and therefore falls under ERISA's preemption clause, § 514(a), 29 U.S.C. § 1144(a).   Pilot Life, 481 U.S. at 47–48, 57; see also Tolton v. Am. Biodyne, Inc., 48 F.3d 937, 942 (6th Cir. 1995) (finding that plaintiff's state law claims, including bad faith, "clearly 'relate to' the benefit plan"); Little v. UNUMProvident Corp., 196 F. Supp. 2d 659, 666 (S.D. Ohio 2002) ("Plaintiff's bad faith claim is the sort of claim which Congress never intended to survive ERISA pre-emption, and it is 'connected with' and 'relates to' an ERISA plan.").  In FMC Corp. v. Holliday, 498 U.S. 52 (1990), the Supreme

---

[11]  KRS 304.9-440 empowers the Commissioner of the Kentucky Department of Insurance to regulate and impose penalties on a licensed insurance agent or broker.  The statute does not create or have a private right of action.  Thus, as a matter of law, Plaintiff has failed to state a claim upon which relief can be granted.

KRS 304.12-070 prohibits the agreement to commit, or by concerted action commit, any act of boycott, coercion, or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance.  The statute has to do with trade practices (forbidding monopolization in the insurance industry) and Plaintiff has failed to plead any facts under which Defendant UniCare could be liable.  Thus, as a matter of law, Plaintiff has failed to state a claim upon which relief can be granted.

KRS 304.12-110 prohibits an insurer or its agents from giving the insured or prospective insured anything of value in connection with an insurance transaction and subjects any violator of the statute to administrative action by the Office of Insurance.  The statute does not create a private right of action.  Thus, as a matter of law, Plaintiff has failed to state a claim upon which relief can be granted.

KRS 304.17A-844 is the "Prohibited activities; penalties" that the Commissioner of the Kentucky Department of Insurance may impose on a self-insured employer-organized association group.  There is no allegation by Plaintiff that any of the Defendants is a self-funded employer-organized association group or that the facts here involve such a group.  Furthermore, the statute does not seem to create a private right of action.  Thus, as a matter of law, Plaintiff has failed to state a claim upon which relief can be granted.

Court held that "self-funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the plans." Id. at 61.

Here, Plaintiff is asserting a state law insurance bad faith claim, arising from alleged improper processing of benefits under Ford's self-funded ERISA employee benefit plan, which clearly "relate[s] to" an employee benefit plan and therefore falls under ERISA's express preemption clause, § 514(a), 29 U.S.C. § 1144(a). Pilot Life, 481 U.S. at 47, 57. As the Plan is self-funded by Ford, no exception to § 514(a) applies. See FMC Corp., 498 U.S. at 61. Thus, the Court concludes that Plaintiff's claim under KRS 304.12-230 is preempted by ERISA and thus Plaintiff's Count 5 claim fails as a matter of law. See Hyde, 2011 WL 4916520, at *1. Because the proposed bad faith claim could not withstand a Rule 12(b)(6) motion to dismiss, Plaintiff's proposed amendment is futile. See Riverview Health, 601 F.3d at 520. Accordingly, the Court denies leave to amend as to Count 5 and dismisses Count 5.

### D.  Count 6 – Breach of Contract

Plaintiff's original complaint alleged a claim for tortious interference with a contract. (See Compl. [DN 1-2] Count XI.)  In denying remand, this Court found that claim was in reality a claim for breach of contract, specifically, breach of the collective bargaining agreement between Defendant Ford and Plaintiff's union, and therefore was completely preempted by § 301 of the LMRA, 29 U.S.C. § 185.  (See Mem. Op. & Order Den. Pl.'s Mot. Remand [DN 16] 10–11.)  As this claim has already been held to be preempted by the LMRA, the amendment to "restyle" the claim as "breach of contract" is futile as to all Defendants.  Accordingly, the Court denies leave to amend as to Count 6 and dismisses Count 6 as to all Defendants.

### E.  Count 8 – Infliction of Emotional Distress

Plaintiff's original Complaint alleged a claim for negligent infliction of emotional distress ("NIED") against all four Defendants.  (See Compl. [DN 1-2] ¶¶ 141–144.)  Under Kentucky law, a plaintiff asserting an NIED claim "must present evidence of the recognized elements of a common law negligence claim: (1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury," and must also show, by "expert medical or scientific proof," "'severe' or 'serious' emotional injury," i.e., one that "a reasonable person, normally constituted, would not be expected to endure."  Osborne v. Keeney, 399 S.W.3d 1, 17–18 (Ky. 2012).

In his Amended Complaint, Plaintiff alleges "[t]hat Defendant Ford, through Defendants Marsden, Morrison, and UniCare engaged in an ongoing scheme to eliminate Plaintiff as a [sic] employee of Defendant Ford by" "prematurely and unlawfully cutting off his health insurance or supplement [sic] insurance benefits" and "coercing him into resigning and waiving his inherent right to use the judicial system for a redress of grievances."  (Am. Compl. [DN 19-1] ¶ 164.)  Plaintiff alleges "[t]hat as a result of said conduct, Plaintiff was forced to seek treatment at Brook's Hospital as an inpatient and continually receives treatment at said hospital for mental anguish, depression, anxiety, mortification of feelings, and embarrassment because of the conduct of Defendants Ford, Marsden, Morrison, and UniCare."  (Id. ¶ 165.)

UniCare argues in its Motion to Dismiss that Plaintiff's NIED claim fails because Plaintiff has pled no facts showing negligence on behalf of UniCare or that the actions of UniCare led to the required level of emotional injury.  Osborne, 399 S.W.3d at 17.  UniCare points out that "the Complaint fails to mention any alleged actions of UniCare until *after*

Plaintiff was allegedly admitted to the hospital due to stress, anxiety and depression purportedly resulting from ongoing harassment at the work place." (Def. UniCare's Br. Supp. Mot. Dismiss [DN 7-1] 6–7 (citing Compl. [DN 1-2] ¶¶ 42–43, 53–55).)  Thus, UniCare's actions necessarily could not have caused the injury alleged by Plaintiff.  Plaintiff did not oppose (or even address) the dismissal of this claim with prejudice in his response brief to Defendant UniCare's Motion to Dismiss [DN 10].[12]

Plaintiff now seeks to amend his original claim for negligent infliction of emotional distress to a claim for "infliction of emotional distress."  Plaintiff's proposed amendment of this claim merely removes the scienter requirement.  (Compare Am. Compl. [DN 19-1] ¶ 167, with Compl. [DN 1-2] ¶ 144.)  Under Kentucky law, there is no such claim as merely "infliction of emotional distress."  A plaintiff claiming infliction of emotional distress either must present evidence of a common law negligence action (and the corresponding heightened showing of severe or serious injury) or must present evidence sufficient to support a claim of *intentional* infliction of emotional distress ("IIED").  Assuming Plaintiff intended the amendment as meaningful, the Court will treat the amended claim as one for IIED.[13]  Under Kentucky law, to maintain a claim for IIED, a plaintiff must show that the defendant's conduct (1) was intentional or reckless; (2) was so outrageous and intolerable that it offends generally accepted standards of decency and morality; and (3) caused severe emotional distress in the victim.  See Watts v. Lyon Cnty. Ambulance Serv., 23 F. Supp. 3d 792, 814 (W.D. Ky. 2014).

The Court finds that the proposed amendment is futile because the amendment, just like the original claim, could not withstand a Rule 12(b)(6) motion to dismiss.  See Riverview Health,

---

[12] Plaintiff likewise wholly failed to address or oppose Defendant UniCare's arguments regarding dismissal of Counts 3, 6, 8, and 9.

[13] Defendant UniCare, in its response brief, treated the amended claim as one for intentional infliction of emotional distress.  (See Def. UniCare's Resp. to Pl.'s Mot. Amend Compl. [DN 20] 5, 9.)

601 F.3d at 520. Under either theory, unless Plaintiff alleges that Defendant UniCare acted *before* Plaintiff suffered injury, he has not alleged causation, a necessary element of either cause of action. Both complaints allege facts regarding Defendant UniCare's action (cutting off insurance benefits) that occurs *after* Plaintiff had already suffered and sought treatment for depression and anxiety, which Plaintiff alleges had been caused by work-related treatment. Accordingly, the Court finds that Plaintiff has failed to allege causation. The Court also finds that Plaintiff has not alleged conduct on the part of UniCare that was so outrageous and intolerable that it offends generally accepted standards of decency and morality. Thus, Plaintiff's Count 8, even if amended, fails to state a claim against Defendant UniCare upon which relief can be granted.[14] As such, the amendment is futile as to Defendant UniCare. See Riverview Health, 601 F.3d at 520. Accordingly, the Court dismisses Count 8 against Defendant UniCare.

In sum, Plaintiff's Motion to Amend his Complaint is granted in part and denied in part. The Court finds that the proposed amendment is futile as applied to Defendant UniCare and grants UniCare's Motion to Dismiss all of Plaintiff's claims against it. Additionally, the Court finds that the proposed amendment is futile as to Count 6, the breach of contract claim, and dismisses Count 6 as to all Defendants. Therefore, the Motion to Amend is denied as to the effects it has on UniCare and Count 6. Defendants Ford, Marzian, and Morrison failed to respond to Plaintiff's Motion to Amend. Accordingly, all amendments are allowed except for those that pertain to Defendant UniCare and to Count 6, which are denied as futile.

---

[14] Even if Plaintiff were able to allege the necessary elements of the cause of action, under either theory, Plaintiff's claim as to UniCare is likely preempted by ERISA. The Sixth Circuit has held that an outrage (IIED) claim based on the improper denial of benefits is preempted. Adams v. Apogee Coal Co., 99 F. App'x 566, 568 (6th Cir. 2004); see Hyde v. Hillerich & Bradley Co., No. 3:11-CV-422-H, 2011 WL 4916250, at *2 (W.D. Ky. Oct. 11, 2011); Little v. UNUMProvident Corp., 196 F. Supp. 2d 659, 670–71 (S.D. Ohio 2002).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant UniCare's Motion to Dismiss [DN 7] is **GRANTED** and Plaintiff's Motion to Amend [DN 19] is **GRANTED in part** and **DENIED in part** consistent with this opinion.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement Response and Record [DN 14] is **DENIED** as moot.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 1, 2015

cc:     Counsel of Record