UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14-CV-00594-JHM

KEITH SAUNDERS                                                                   PLAINTIFF

V.

FORD MOTOR COMPANY,                                                   DEFENDANTS
JEFF MARZIAN,
and KAREN MORRISON

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Ford Motor Company (hereinafter "Ford"),

Jeff Marzian, and Karen Morrison's motion for summary judgment. [DN 64].  Fully briefed, this

matter is ripe for decision.  For the following reasons, the motion for summary judgment is

GRANTED.

I. BACKGROUND

Plaintiff Keith Saunders began working for Ford in July 2001.  (Pl.'s Am. Compl. [DN

25] ¶ 9.)  Saunders is a member of a bargaining unit, Local 862 of the United Automobile,

Aerospace and Agricultural Implement Workers of America ("UAW").  (Id. ¶ 26.)  Ford and

UAW Local 862 are parties to a collective-bargaining agreement ("CBA").  As a union worker,

Saunders' employment is governed by the CBA entered into by UAW Local 862 and Ford.  In

2001, while working at Ford's Minnesota facility, Saunders sustained work-related injuries.  As a

result of these injuries, he has been placed on permanent work restrictions that continue to limit

his ability to complete certain work-related tasks.

In December 2011, Saunders was relocated to the Louisville Assembly Plant.  Saunders

alleges that upon relocation, he was stripped of his seniority and placed in a job that violated his

work restrictions.  According to Saunders, he requested accommodations for his disabilities, but

Ford refused to reevaluate him, advising him that the company doctors felt as though Plaintiff could "perform the functions of the position without restriction." (*Id.* ¶ 29.)

On February 1, 2013, Saunders filed a charge of discrimination based on disability and failure to provide reasonable accommodation with the Equal Employment Opportunity Commission ("EEOC"). According to Saunders, around five days after filing the charge, he was placed on "No Work Available" ("NWA") status and put off of work by Defendant Jeff Marzian, Superintendent of the Louisville plant, which Saunders contends was in violation of the CBA. (*Id.* ¶ 30–32.) Saunders subsequently filed a grievance with his union representative in April 2013, alleging that Ford had violated the CBA without justification and requesting that he receive eighty days' pay for lost wages because of being placed on NWA status.

In spring 2013, Saunders, Ford (through Defendant Karen Morrison, Labor Relations Supervisor at the Louisville plant), and the EEOC engaged in mediation. As a result of the mediation, Saunders was placed back to work in the trim department, in a position which met his work restrictions. Around three weeks later, Ford informed Saunders that there was no longer any work available in the trim department and moved him to another department. Saunders contends that there was still work available in the trim department at that time and that his new position, although it did not violate his work restrictions, was below his seniority level. (*Id.* ¶ 41–42.) According to Saunders, another employee not named in this action repeatedly harassed him while he performed his new job, and as a result of that harassment, he checked himself into a medical facility for anxiety, depression, and stress, where he stayed for approximately six weeks between October and December 2013. (*Id.* ¶ 44–46.)

In July 2013, Saunders attempted to reopen a workers' compensation claim in Minnesota related to the injuries he suffered while working at Ford's Minnesota facilities.  Saunders engaged in settlement discussions regarding this claim, but a settlement was never reached.

After returning to work on or around December 16, 2013, Saunders alleges that he stopped receiving healthcare benefits from Ford through UniCare, Ford's third-party claims processor, despite the fact that he was still being treated for depression and anxiety stemming from work related treatment.  (*Id.* ¶ 55.)  Payments resumed on or around January 27, 2014.

Also on December 16, 2013, Saunders filed a second grievance with UAW Local 862, contending that Marzian immediately placed him on NWA status upon returning to work instead of attempting to find him a position that was suitable for his work restriction, which Saunders contends was a violation of the CBA.  (*Id.* ¶ 48.)  Then, in May 2014, Saunders contends that Morrison refused to place him back to work even though allegedly he had been called back to work, because she believed he had signed a worker's compensation agreement and resigned from Defendant Ford.  (*Id.* ¶ 70.)  Plaintiff states that since that time he was placed in a temporary position in violation of his rights under the CBA.

On July 30, 2014, Saunders filed this action in Jefferson Circuit Court against Ford, Marzian, Morrison, and UniCare, raising twelve separate state-law claims against Defendants. Defendants removed to this Court, and this Court denied Saunders motion to remand.  [DN 16]. This Court then dismissed all claims against UniCare and permitted Saunders to amend his complaint as to certain claims.  [DN 24].   Saunders amended complaint contains eight viable claims against the remaining defendants:[1] discrimination on the basis of disability in violation of KRS 344.040 (Count I), retaliation for filing an EEOC complaint in violation of KRS 344.280

---

[1] Despite the Court dismissing Counts V and VI in its May 1, 2015 order [DN 24], Saunders still included these claims in his amended complaint [DN 25].

(Count II), retaliation for filing workers' compensation claim in violation of KRS 342.197 (Count III), withholding of wages in violation of KRS Chapter 337 (Count IV), interference with seniority in violation of the CBA (Count VII), infliction of emotional distress (Count VIII), negligent hiring/retention/supervision of Marzian and Morrison by Ford (count IX), and civil conspiracy (Count X).  Defendants have moved for summary judgment as to all remaining claims.  [DN 64].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient;

there must be evidence on which the jury could reasonably find for the [non-moving party]."

*Anderson*, 477 U.S. at 252

## III. DISCUSSION

### A. LABOR MANAGEMENT RELATIONS ACT PREEMPTION

Defendants argue that all but one of Saunders' remaining claims, the workers' compensation retaliation claim, are preempted under § 301 of the Labor Management Relations Act ("LMRA"). They further argue that, because the claims are preempted and must be treated as § 301 claims, the claims must be dismissed due to, among other reasons, Saunders failure to establish that his union breached the duty of fair representation. The Court will first address the issue of whether these seven claims are preempted.

### 1. PREEMPTION

Section 301 of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has recognized § 301 as one of only a few statutes that have complete preemptive force so as to require any state law that falls within its purview to instead be brought as a federal claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003). Section 301 governs claims founded directly on rights created by collective bargaining agreements, as well as claims that are substantially dependent on analysis of a collective bargaining agreement. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987).

"Given the importance of maintaining uniform federal law, the Supreme Court 'has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective

bargaining agreement.'"  *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004) (quoting *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc)).  Preemption under § 301 applies not only to state-law claims alleging contract violations, but has expanded to include state-law tort claims.  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).  However, not every tort claim concerning employment or tangentially involving a provision of the CBA will be subject to preemption under § 301.  *Id.* at 211–12 ("In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").  To survive preemption under § 301, the tort claims must be "independent" of the CBA.  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10 (1988); *Lueck*, 471 U.S. at 213 (analyzing state-law claim to determine if it was "independent of any right established by contract, or, instead, whether evaluation of the tort claim [was] inextricably intertwined with consideration of the terms of the labor contract").

Based on the Supreme Court's guiding principles, the Sixth Circuit has developed a two-step approach for determining whether § 301 preemption applies.  *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)).

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms.  Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.  If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption.  However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe*, 32 F.3d at 216 (citations omitted).  That is, a state-law claim is preempted by § 301 either (1) if "the right claimed by the plaintiff is created by the collective bargaining agreement

[rather than] by state law," or (2) if "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement." *Mattis*, 355 F.3d at 906 (citing *DeCoe*, 32 F.3d at 216).

With respect to the latter inquiry, courts must ask whether a plaintiff can prove the elements of his state-law claim without contract interpretation. *DeCoe*, 32 F.3d at 216. "In order to make [this] determination, the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.* (citing *Terwilliger v. Greyhounds Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989)). "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id.* A defendant's reliance on the CBA as an affirmative defense will not turn an otherwise independent claim into a claim dependent on the CBA. *Id.*

Using the approach established in *DeCoe*, the Court must evaluate all seven claims individually to determine if preemption applies.

### A. COUNT I – DISABILITY DISCRIMINATION

Saunders alleges in Count I of his amended complaint that Ford, through Marzian and Morrison, unlawfully discriminated against him on the basis of his disability in violation of the Kentucky Civil Rights Act (KCRA). KRS 344.040. He specifically pleads the following conduct:

> 90.     That Defendant Ford, through Defendant Marzian and Defendant Morrison placed Plaintiff on NWA status because of his disability in violation of contractual obligations with UAW;
>
> . . .

> 95.   That as a result of seeking medical treatment, Plaintiff was
> again placed on NWA status in violation of his contractual union
> rights;
> 96.   That Defendant Ford has many positions that could
> accommodate Plaintiff's permanent work restrictions such as
> Inspector, a job he once held and pursuant to contract, Defendant
> Ford is required to exhaust all zones before placing a person with a
> work related injury on NWA status which was intentionally not
> done by Defendant Ford through Defendant Marzian and
> Defendant Morrison . . .

(Pl.'s Am. Compl. [DN 25].)  To establish a claim for disability discrimination under the KCRA, Saunders needs to prove that he has a disability as defined under the statute, he is otherwise qualified to perform the job in question, and he suffered an adverse employment decision because of his disability.  *Murray v. E. Ky. Univ.*, 328 S.W.3d 679, 682 (Ky. Ct. App. 2009) (citations omitted).

As to the second consideration under *DeCoe*, the right claimed by Saunders arises under state law, as he has a right to not be discriminated against independent of the CBA.  However, as to the first consideration, Saunders claim requires an interpretation of the CBA.  Saunders' claim relies upon specific provisions of the CBA to demonstrate his discrimination.  He asserts that Ford did not follow the procedures required by the CBA when attempting to find him a suitable job for his work restriction, such as the requirement that Ford "exhaust all zones" before declaring that no work is available, and that other jobs were available to him under the CBA.  These assertions are central to Saunders' claim, as  the discrimination he alleges is not simply that he was terminated or denied a promotion.  Instead, the discrimination he alleges is that he did not receive the protections owed to him under the CBA because of his disability.  This will inevitably require an interpretation of the CBA to understand exactly what protections and procedures were owed to him.

Saunders' claim is not merely one in which he asserts that Defendants violated his rights under the statute, which would not be preempted.  In *Smolarek*, the Sixth Circuit found that a state law cause of action "based *solely* on Michigan's [Handicappers' Civil Rights Act]" was not preempted by § 301, as the claim would require no interpretation of the CBA.  879 F.2d at 1333 (emphasis added).  Likewise, in *Paul v. Kaiser*, 701 F.3d 514, 522 (6th Cir. 2012), the Sixth Circuit found that there was no § 301 preemption of a claim under an Ohio civil rights statute because the plaintiff's "complaint does not refer to *any rights under the CBA* and does not even hint at the need to resolve any dispute concerning interpretation of CBA terms." (emphasis added).  Saunders' claim differs in that it is based on his rights under the CBA, specifically his right to not be placed on NWA before all zones were exhausted.  Because the Court must interpret the CBA to resolve this claim, the first consideration under *DeCoe* has not been satisfied, and the claim is preempted under § 301.

## B. COUNT II - RETALIATION

Saunders alleges in Count II that Ford, through Marzian and Morrison, retaliated against him in violation of KRS 344.280 for filing a charge with the EEOC and making other complaints about the discrimination he allegedly faced due to his disability.  Saunders alleges Defendants retaliated in the following manner:

> 106.  That Defendant Ford, through Defendants Marzian and Morrison intentionally and negligently placed Plaintiff on NWA in violation of their contractual obligations with the UAW, and as retaliation for filing grievances, EEOC complaints, and having an injured shoulder, arm, hand, and mental health conditions . . .

(Pl.'s Am. Compl. [DN 25].)  Under *DeCoe*, the second consideration is satisfied, as Saunders has a state-law right to not face retaliation for reporting discrimination under KRS 344.280 independent of the CBA.  But again, Saunders cannot satisfy the first consideration to avoid

preemption, as the claim requires an interpretation of the CBA.  A retaliation claim under KRS 344.280 requires, among other elements, that the plaintiff prove "the defendant took an employment action adverse to the plaintiff . . ." *Brooks v. Lexington-Fayette Urban Cty. Housing Authority*, 132 S.W.3d 790, 803 (Ky. 2004).  The adverse action alleged in Saunders claim is that Ford did not adhere to the CBA by placing him on NWA.  Resolution of this claim will require interpreting the CBA to determine if Ford acted in accordance with the CBA by doing this.

Saunders claim is distinguishable from the Illinois state law claim for retaliatory discharge the Supreme Court found not to be preempted in *Lingle*.  In that case, the Court found the state law claim to be independent of the CBA, as the claim did not require any interpretation of the CBA, while also noting that a claim will not be preempted only "as long as the state-law claim can be resolved without interpreting the agreement itself." *Lingle*, 486 U.S. at 410.  That is not the case here, as the retaliation claim, as plead by Saunders, requires interpreting the CBA. Likewise, the Sixth Circuit in *Smolarek* determined that a Michigan state-law for retaliatory discharge was not preempted because it was made "without reference to the collective bargaining agreement." *Smolarek*, 879 F.2d at 1331.  Because Saunders' claim does not meet this standard but instead requires an interpretation of the CBA, the claim is preempted by § 301.

### c. COUNT IV – WAGE LAW VIOLATIONS

Saunders alleges in Count IV that Ford did not allow him to work for a total of 80 days due to his work restriction, and because he was entitled to work under the CBA during this time, Ford has illegally withheld wages from him for those 80 days in violation of KRS Chapter 337. Saunders specifically alleges in his complaint that he was entitled to these wages "as a result of Defendant Ford's contractual obligations with the UAW Local 862." (Pl.'s Am. Compl. [DN 25] ¶ 118.)  While KRS Chapter 337 does contain various laws prohibiting wage withholding by an

employer, Saunders has essentially claimed that Ford breached the CBA by not allowing him to work those 80 days, the exact type of claim § 301 was intended to preempt.  Saunders' claim will require this Court to interpret the CBA to determine whether he was entitled to work those days and whether Ford violated the CBA by prohibiting him from working.  Thus, the first requirement under *DeCoe* to avoid preemption has not been satisfied.

This Court's decision in *Hughes v. UPS Supply Chain Solutions, Inc.*, 815 F. Supp. 2d 993 (W.D. Ky. 2011) does not change this conclusion.  In *Hughes*, the plaintiffs sought compensation under KRS Chapter 337 for time spent in security checkpoints before traveling to work stations, and the Court determined that there was no preemption under § 301 as the claims were "based solely on rights created by state law and do not require substantial interpretation of the CBA."  *Id.* at 997.  But that is not the case with Saunders' claim, as it both relies upon the CBA to assert the claim and requires an interpretation of the CBA to resolve the claim.  Saunders has not asserted that he has worked without compensation, as the *Hughes* plaintiffs alleged. Instead, he has asserted that the CBA gave him a *right* to work during those 80 days, and Defendants breached the CBA by denying him this right; he relies on KRS Chapter 337 merely for a remedy.  Therefore, the claim for wage law violations is preempted by § 301.

### d. COUNT VII – SENIORITY VIOLATIONS

Saunders alleges in Count VII that Ford, through Marzian and Morrison, violated his seniority rights in violation of KRS 344.045 by denying him the seniority he had obtained while working for Ford in Minnesota.  The Court already determined in its January 22, 2015 order on Saunders' motion to remand that this claim "is in substance a claim for breach of the CBA" and thus "completely preempted by § 301."  [DN 16, at 11–12].  All of the rights Saunders alleges were violated are created by the CBA, and thus are not founded independently in state law,

failing to meet the second consideration under *DeCoe* to avoid preemption.  Therefore, the claim is preempted under § 301.

### E. COUNT VIII – INFLICTION OF EMOTIONAL DISTRESS

Saunders alleges in Count VIII that Ford, Marzian, and Morrison committed the tort of intentional infliction of emotional distress ("IIED").  Saunders specifically alleges the following:

> 164. That Defendant Ford, through Defendants Marzian, Morrison, and UniCare engaged in an ongoing scheme to eliminate Plaintiff as a employee of Defendant Ford by dismissing his grievances, failure to place him back to work, prematurely and unlawfully cutting off his health insurance or supplement insurance benefits, failing to honor contractual obligations, coercing him into resigning and waiving his inherent right to use the judicial system for a redress of grievances, making discriminately charged statements, humiliating him, lying to him, listing him as a non-employee in the computer systems, calling him to work when Defendant Ford was on actual notice Plaintiff was in another state handling a Workers Compensation issue, and placing him into work zones and positions that violated his work restrictions . . .

(Pl.'s Am. Compl. [DN 25].)  The tort of IIED in Kentucky requires, among other elements, that "the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality."  *Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000).

The Court is guided by the Sixth Circuit's decision in *Mattis*, as that case specifically found a claim for IIED under Michigan law to be preempted by § 301.  In *Mattis*, the IIED claim was preempted because the allegations of outrageous conduct "all involve workplace actions taken under the ostensible authority of the CBA" and therefore require an interpretation of the CBA, as the court "could not possibly know whether [the defendant] acted outrageously or was merely insisting on his legal rights as a supervisor" without reference to the CBA.  *Mattis*. 355 F.3d at 908.  Saunders' claim presents the same issue, as his allegation that Defendants acted outrageously by "failing to honor contractual obligations" will require an interpretation of the

CBA.  Thus, the claim fails to meet the first consideration under *DeCoe* and is preempted under § 301.

### F. COUNT IX – NEGLIGENT HIRING, RETENTION, AND SUPERVISION

Saunders alleges in Count IX that Ford was negligent in its hiring, retention, and supervision of Marzian and Morrison.  Specifically, Saunders pleads the following facts:

> 173.    That Defendant Marzian intentionally and negligently refused to place Plaintiff back to work even though UAW contract mandates that work related injuries have priority, placed Plaintiff in positions he knew, or should have known, were a violation of his work restrictions . . .
> . . .
>
> 176.    That Defendant Marzian's negligent failure to follow contractual obligations . . . has effectively placed Plaintiff off work . . .  and has violated Defendant Ford's policies on discrimination . . .

(Pl.'s Am. Compl. [DN 25].)    While these are separate causes of action that each require different negligent conduct on the part of the defendant, all require that the defendant's negligence create "an unreasonable risk of harm to the plaintiff."  *Stalbosky v. Belew* 205 F.3d 890, 894 (6th Cir. 2000) (applying Kentucky law for negligent hiring and retention).  *See also Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) ("Kentucky law recognizes that an employer can be held liable for the negligent supervision of its employees . . . only if he or she knew or had reason to know of the risk that the employment created.")

Saunders claim meets the requirement of the second consideration under *DeCoe*, as his state-law claim exists independent of the CBA.  However, as to the first consideration, his claim will require an interpretation of the CBA.  Saunders' claim alleges that Ford either knew or should have known of the harm Marzian was likely to cause Saunders if he was hired, retained, or not properly supervised.  But the harm Saunders alleges is Marzian's failure to follow the

CBA's provisions regarding work-related injuries.  This will require the Court to interpret the CBA to determine if Marzian's conduct actually failed to conform to the CBA's requirements on work-related injuries.  *See Brown v. Royal Consumer Products, LLC*, 2008 WL 2795334, at *4 (W.D. Ky. July 18, 2008) ("[A]ny duty relating to the hiring, supervision or retention of employees in the collective bargaining context . . . arise[s] solely from the collective bargaining agreement . . . [and] resolution of these types of claims . . . require interpretation of that agreement") (citations omitted).  Therefore, Saunders' claim for negligent hiring, supervision, and retention is preempted under § 301.

## G. COUNT X – CIVIL CONSPIRACY

Saunders alleges in Count X that Ford, Marzian, and Morrison acted in concert to commit many of the above torts against him.  In Kentucky, a claim of civil conspiracy requires the plaintiff to show "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act."  *Peoples Bank of N. Ky., Inc. v. Crowe Chizek and Co. LLC*. 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (citations omitted).  Saunders alleges that the unlawful acts Defendants conspired to do are the same unlawful acts that the Court has already determined are preempted by § 301 due to Saunders basing his claims on Defendants' "acts to place Plaintiff off of work in violation of contractual rights . . ."  (Pl.'s Am. Compl. [DN 25] ¶ 180.)  Because this will require interpretation of the CBA to resolve this claim, Saunders claim of civil conspiracy is preempted by § 301.  *See DeCoe*, 32 F.3d at 217 ("DeCoe's civil conspiracy claim, *being derivative of his defamation claims*, also was preempted") (emphasis added).

## 2. LMRA CLAIMS

Once the Court has determined that certain claims are preempted by § 301, "the court must 'recharacterize' the state cause of action as a federal claim and analyze the claim under federal law." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 364 n. 7 (6th Cir. 2008) (citations omitted).  A claim under § 301 of the LMRA, as the Supreme Court explained in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983),

> comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.  Yet the two claims are inextricably interdependent. To prevail against either the company or the Union . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301 . . . but a hybrid § 301/fair representation claim . . .

(internal quotations and citations omitted).  Thus, Saunders must prove that both Defendants breached the CBA and his union breached its duty of fair representation.

All of Saunders preempted claims fail under this framework, as Saunders has failed to plead or prove any facts demonstrating that the union breached its duty of fair representation. Saunders has not demonstrated any facts at all related to the union's representation of him in the grievance processes in which he was engaged.  Without proof that the union breached its duty owed to him, all of Saunders preempted state-law claims fail.  Therefore, Defendants' motion for summary judgment as to Counts I, II, IV, and VII – X is **GRANTED**.

## B. WORKERS' COMPENSATION RETALIATION CLAIM

The only claim Defendants do not argue is preempted by § 301 is Count III of Saunders' complaint.   Count III alleges that Saunders faced retaliation for pursuing a workers' compensation claim in Minnesota related to his injuries suffered on the job while working for Ford there in 2001.  Saunders' attempt to reopen the 2001 workers' compensation claim was due to Saunders feeling that he was inadequately compensated for his permanent injuries.  (Dep. Keith Saunders [DN 36-12] at 104.)  Saunders alleges that Defendants then retaliated against him by placing him on NWA status and attempting to settle his workers' compensation claim with him in exchange for giving up his other employment-related claims and potentially resigning his position at Ford.

KRS Chapter 342 pertains to the state's workers' compensation laws, with KRS 342.197 stating, "No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter."[2]  "To establish a claim under this provision, an employee must show that (1) [he] participated in 'a protected activity,' (2) the employer 'knew' that the employee had done so, (3) the employer took an 'adverse employment action' against the employee, and (4) 'a causal connection' existed between the two." *Witham v. Intown Suites Louisville Ne., LLC*, 815 F.3d 260, 263 (6th Cir. 2016) (quoting *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 916 (Ky. Ct. App. 2006)). If the employee can establish all four prima facie elements, then the burden shifts to the employer to identify "a non-retaliatory reason for the adverse employment decision." *Upchurch*, 214 S.W.3d at 916.  If a non-retaliatory reason can be shown, then the employee "may still

---

[2] Defendants argue that Saunders' claim must fail as a matter of law because, even if he was retaliated against for filing a workers' compensation claim, that claim arose under the laws of Minnesota, not Kentucky, taking it outside the protections of KRS 342.197.  The Court need not address this argument, as regardless of whether KRS 342.197 would protect Saunders from retaliation for his out-of-state claim, his claim fails on the merits.

succeed by showing the proffered reasons were nothing but 'a pretext' for retaliation." *Witham*, 815 F.3d at 263 (citations omitted).

Saunders has established the first two elements of his prima facie case, as he was engaged in protected activity by pursuing a workers' compensation claim and Ford was aware of this through Ford's settlement talks with him regarding his claim.  As to the third element, Saunders alleges two distinct adverse actions taken against him: being placed on NWA status, and Ford's attempts to settle his workers' compensation claim with him in exchange for giving up the other claims in this present action.  An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).  Generally, it involves changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," and usually "inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir.2008). Such a change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999).

Under this definition, Ford's entering into settlement negotiations with Saunders was not an adverse employment action.   By reopening his claim, Saunders sought additional compensation for his injuries, and Ford's negotiations and settlement offers were made in an attempt to provide that compensation.  If the purpose of KRS 342.197 was "to protect persons who are entitled to benefits under the workers' compensation laws," then surely an attempt by an employer to settle those claims so as to provide those benefits cannot be considered adverse to the employee.  *Overnite Transp. Co. v. Gaddis*, 793 S.W.2d 129, 130 (Ky. Ct. App. 1990).  The

fact that Ford's settlement offers may have required Saunders to give up his other employment claims and resign from Ford does not change this conclusion, as Saunders was free to refuse the offer, which he ultimately did.  Saunders frames the settlement negotiations as an attempt to pressure him into settling his claims, but even if that was Ford's ultimate purpose, there is nothing improper with Ford seeking to have Saunders settle his claims on terms that are amenable to both parties.  While the proposed settlement may have led to a "significant change in benefits" to Saunders, it would have only been with Saunders' consent.  Thus, the settlement offers cannot be considered adverse employment actions against Saunders, leaving only his placement on NWA status as an adverse action taken against him.

However, Saunders cannot establish a causal connection between his attempt to reopen his workers' compensation claim and his placement on NWA status.   The only evidence Saunders' offers as to a causal connection is the temporal proximity between his reopening of the claim and his placement on NWA status.  Saunders reopened his claim on July 9, 2013, [DN 64-13], and he was subsequently placed on NWA status on August 27, 2013, [DN 64-5, at 18], placing the two events within roughly one-and-one-half months of each other.  There is no requisite amount of time that will, as a matter of law, establish temporal proximity.  *E.g., Bush v. Compass Group USA, Inc.*, --- F. Supp. 3d ---, 2016 WL 3827536 (W.D. Ky. July 13, 2016) (four to eight months not sufficient for temporal proximity); *Hume v. Quickway Transportation, Inc.*, 2016 WL 3349334 (W.D. Ky. June 15, 2016) (one month sufficient for temporal proximity).  But "substantial case law from [the Sixth] Circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone."  S*ee Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (collecting cases).  Specifically, the more time that elapses between the protected activity and the adverse employment action, the more the

plaintiff must supplement his or her claim with other evidence of retaliatory conduct to establish causality. Saunders fails to provide any additional evidence of causation beyond temporal proximity, and without any other evidence of retaliatory conduct, the Court finds that the one-and-one-half month gap between the protected conduct and the adverse action is alone insufficient to establish a causal connection in this case.

But even if Saunders had presented sufficient evidence to support a finding of a causal connection between the two, Ford has presented ample evidence that Saunders' placement on NWA status was done for a legitimate, non-retaliatory reason. Specifically, Ford has offered proof that it placed Saunders on NWA because Saunders had complained about paint fumes bothering him in his current job in the paint department. [DN 64-5, at 18–19]. After consulting with medical staff, Saunders was placed on a work restriction that precluded him from working in that department. Saunders makes no attempt to demonstrate that his placement on NWA status because of his complaints about the paint fumes is pretextual, as he even admitted in his deposition that he was removed from the job because it "caused problems with my blood pressure." [DN 36-12 at 61]. Based on this evidence, no reasonable juror would conclude that Saunders has met his burden of establishing "that the workers' compensation claim was a substantial and motivating factor but for which the employee would not have" faced the adverse action that he did. *First. Prop. Mgmt. Co. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993). Therefore, Defendants' motion for summary judgment as to Count III is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED.**

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

November 18, 2016

cc: counsel of record